UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
WINDWARD BORA LLC,

                Plaintiff,

        -against-

ANA C. REGALADO and NEW YORK
CITY PARKING VIOLATIONS BUREAU,

                Defendants.
-----------------------------------------------------------X

                        **MEMORANDUM**
                        **AND ORDER**
                        19-CV-4413 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Windward Bora LLC ("Plaintiff" or "Windward Bora") initiated this action on July 31, 2019, against Ana C. Regalado ("Defendant" or "Ms. Regalado") and the New York City Parking Violations Bureau[1] to foreclose a residential mortgage encumbering a property located at 110-35 Saultell Avenue, Flushing, NY 11368, a/k/a 110-35 Saultell Avenue, Corona, NY 11368 (the "Property"). *See generally* Compl., ECF 1. On November 12 and 13, 2025, the Court held a two-day bench trial focusing on discrete issues in dispute after summary judgment. *See* Nov. 12, 2025 ECF Min. Entry & Order; Nov. 13, 2025 ECF Min. Entry & Order; *see generally Windward Bora LLC v. Regalado* ("*Regalado*"), 751 F. Supp. 3d 122 (E.D.N.Y. 2024) (holding that there were no material facts in dispute as to whether Defendant is in default on her mortgage and that the note underlying the mortgage on the Property is not a negotiable instrument, but that other disputes of material fact precluded summary judgment).

---

[1] Defendant New York City Parking Violations Bureau was dismissed from this case on January 14, 2021. *See* Jan. 14, 2021 ECF Order.

The topics for trial included: (1) whether Plaintiff has standing to bring the case under the New York Real Property Actions and Procedure Law ("RPAPL") and (2) whether Plaintiff complied with the RPAPL's notice requirements. *See Regalado*, 751 F. Supp. 3d at 131–35. The parties also adduced evidence concerning Defendant's counterclaims, including (1) whether Plaintiff violated the disclosure requirements mandated by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, entitling Defendant to damages, and (2) whether Plaintiff failed to comply with the TILA's notice provision, 15 U.S.C. § 1641(g), entitling Defendant to attorney's fees and costs.[2] *See* Nov. 12, 2025 ECF Min. Entry & Order; Nov. 13, 2025 ECF Min. Entry & Order; Nov. 12, 2025 Trial Tr. ("Day 1 Trial Tr."), ECF 97; Nov. 13, 2025 Trial Tr. ("Day 2 Trial Tr."), ECF 96. Having reviewed the evidence, assessed the credibility of the witnesses, and applied the relevant law, the Court now makes the following findings of fact and reaches the following conclusions of law. For the reasons set forth below, the Court finds that Plaintiff did not adduce sufficient evidence to establish its standing to foreclose and enters judgment for Defendant.

## RELEVANT PROCEDURAL HISTORY

### I.  The Allegations and Case Initiation

As noted above, Plaintiff filed the complaint in this case on July 31, 2019, seeking to foreclose on the mortgage encumbering the Property. *See* Compl., ECF 1. Plaintiff is

---

[2] The Court observes that Plaintiff, at trial and throughout its post-trial briefing, refers to this counterclaim as arising under the Real Estate Settlement Procedures Act of 1974 ("RESPA"). *See, e.g.*, Pl. Findings of Fact ("Pl. Mem."), ECF 92, at 3 (citing 15 U.S.C. § 1641(g) for "RESPA counterclaims"), 9–13; Day 1 Trial Tr., ECF 97, at 16:3–5, 16:13–20 (Plaintiff's witness testifying as to the standard practices for mailing "RESPA notices, things like that"); Pl. Reply, ECF 95, at 1. The Court notes that RESPA is codified at 12 U.S.C. § 2601 *et seq.*, and that 15 U.S.C. § 1641(g) is part of the TILA.

an LLC whose sole member, Yonel Devico, is a citizen of Morocco, while Defendant is a citizen of New York. *Id.* ¶¶ 3, 4. In the complaint, Plaintiff alleged that on May 9, 2007, Defendant entered into a loan agreement with National City Bank by executing a promissory note for $172,950.00 (the "Note") and secured the Note with a mortgage on the Property (the "Mortgage"). *Id.* ¶ 10(a)–(b). The full value of this loan agreement was disbursed on that same day and used for the purchase of the Property and associated closing costs, along with the value of a separate mortgage loan agreement that is not the subject of this suit. *See Regalado*, 751 F. Supp. 3d at 127; *see also* Def. Findings of Fact ("Def. Mem."), ECF 93, at 5.

Per the complaint, the Mortgage and Note were assigned to US Mortgage Resolution LLC ("USMR") on September 20, 2018, and then to Plaintiff on March 29, 2019. Compl., ECF 1, ¶ 10(c)–10(d). After June 2015, Defendant ceased making monthly payments on the Mortgage. *See* Def. Mem., ECF 93, at 6; *see also Regalado*, 751 F. Supp. 3d at 129 (noting the absence of dispute over the fact that Defendant "has not made any payments toward the Subject Loan since approximately June 2015" (quotation marks omitted)). On April 30, 2019, Plaintiff provided a notice to Defendant, advising that because she had not made her monthly payments — an "Event of Default" under the Loan Documents — Plaintiff had the right to accelerate the loan and declare the outstanding principal balance and all accrued interest immediately due and payable if Defendant did not cure the arrears. Compl., ECF 1, ¶ 14. Defendant failed to respond to this notice by the time the case was filed. *Id.* ¶ 16. In the complaint, Plaintiff alleged that Defendant owed $189,697.97 in outstanding principal and interest, and would also be liable for attorney's fees, other costs and disbursements, and any additional fees under the terms of the Note and Mortgage. *Id.* ¶ 17.

3

On September 18, 2019, Defendant filed an answer. *See generally* Answer, ECF 15. Following the commencement of discovery, an attempted mediation, and the appearance of new counsel for Defendant, Defendant filed an amended answer, asserting 10 affirmative defenses and three counterclaims. *See* Oct. 31, 2019 ECF Min. Entry (referring case to mediation); Mar. 18, 2020 ECF Min. Order (granting motion to withdraw); May 29, 2020 Notice of Appearance; Am. Answer, ECF 38; *see also* Answer to Countercls., ECF 39.

In November 2020, Plaintiff requested a pre-motion conference on its anticipated motion for summary judgment, which the presiding judge at the time, the Honorable Dora L. Irizarry, denied as unnecessary; she directed the parties to propose a briefing schedule, which was later entered.[3] Nov. 18, 2020 ECF Order; Dec. 1, 2020 ECF Order. On November 29 and 30, 2023, the parties cross-moved for summary judgment. *See* Def. Mot. for Summ. J., ECF 72; Mot. for Summ. J., ECF 73.

## II. Summary Judgment Ruling

On September 27, 2024, Judge Irizarry denied Defendant's motion for summary judgment and granted in part and denied in part Plaintiff's motion. *See generally*

---

[3] Notably, on January 14, 2021, Judge Irizarry stayed the case pursuant to the COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020, and the stay was extended through January 15, 2022. *See* Jan. 5, 2021 ECF Order; Jan. 14, 2021 ECF Order (entering stay); Jan. 21, 2021 ECF Order (extending stay); May 6, 2021 ECF Order (same); Sept. 7, 2021 ECF Order (same). After requesting to extend the briefing schedule, in March 2022, the parties initially filed their summary judgment motions, which Judge Irizarry struck for failure to comply with Local Civil Rule 56.1 and other deficiencies in the briefing. Jan. 14, 2022 ECF Order (granting extension); Mar. 15, 2023 ECF Order (striking parties' motions for summary judgment); *see* Def. Mot. for Summ. J., ECF 65; Pl. Mot. for Summ. J., ECF 66. From there, the parties re-attempted mediation, which was again unsuccessful. *See* Apr. 12, 2023 ECF Order Referring Case to Mediation; Aug. 10, 2023 ECF Order (directing a briefing schedule for summary judgment motions following unsuccessful mediation). Following the second try at mediation, Judge Irizarry directed the parties to resubmit their cross-motions for summary judgment. *See* Aug. 25, 2023 ECF Order (entering briefing schedule); Oct. 26, 2023 ECF Order (granting extension of briefing schedule).

*Regalado*, 751 F. Supp. 3d 122; *see also* Order, ECF 74. First, Judge Irizarry found that Plaintiff had not established its *prima facie* case for foreclosure because there remained a dispute of material fact about whether Plaintiff provided proper notice under RPAPL § 1303. *See Regalado*, 751 F. Supp. 3d at 130–31. Specifically, § 1303 requires that a notice of foreclosure be served to homeowners on a piece of paper that is a color other than white, and Plaintiff and Defendant submitted conflicting evidence about whether Plaintiff provided a compliant notice. *Id.* Second, Judge Irizarry found there was a question of fact regarding whether Plaintiff had standing as the assignee of the Note, and third, that this question of standing is a "threshold matter" that required denial of summary judgment as to Defendant's TILA counterclaims. *Id.* at 132–33, 134–35.

### III. Trial Proceedings

Following the summary judgment order, the parties filed a proposed joint pretrial order on January 29, 2025, and Judge Irizarry held an initial pretrial conference on April 2, 2025. Proposed Pretrial Order, ECF 78; Apr. 2, 2025 ECF Min. Entry. Following the pretrial conference, the parties filed another joint pretrial order, indicating their consent to trial by the undersigned Magistrate Judge. Joint Pretrial Order, ECF 79; *see* May 15, 2025 ECF Order; Consent to Jurisdiction, ECF 81; Order, ECF 82.

The Court scheduled a status conference for June 5, 2025, at which the parties represented that they sought a bench trial and that they did not anticipate filing any pre-trial motions *in limine*. May 20, 2025 ECF Scheduling Order; June 5, 2025 ECF Min. Entry & Order. At the final pretrial conference, on October 23, 2025, Defendant indicated her intent to move *in limine* to exclude Plaintiff's process server's testimony on the grounds that his identity was not included among Plaintiff's initial disclosures. Oct. 23, 2025 ECF Min. Entry & Order; *see* Def. Mot. in Lim., ECF 85. The Court held a

5

status conference to address "the reason(s) for the delay in disclosing this witness" and "what if any discovery Plaintiff would need to cure any prejudice caused by the late disclosure." Oct. 31, 2025 ECF Scheduling Order; *see* Nov. 3, 2025 ECF Min. Entry & Order. The Court directed the parties to meet and confer about what discovery Defendant would seek from the witness in advance of trial, and to continue briefing the issue. Nov. 3, 2025 ECF Min. Entry & Order; *see also* Stipulation of Briefing Schedule, ECF 84.

Trial commenced on November 12, 2025. Nov. 12, 2025 ECF Min. Entry. The Court denied Defendant's motion *in limine* in part, allowing Plaintiff's process server to testify but precluding the introduction of Plaintiff's Exhibit 6, a blue § 1303 notice intended as a demonstrative. *Id.*; *see* Day 1 Trial Tr., ECF 97, at 7:22–8:25. Witnesses Philip Piscitello, Director of Foreclosure Oversight of Land Home Financial Services, Inc. ("Land Home"), a mortgage loan servicer; Lisandro Luna, the process server; and Yonel Devico, the sole member of Windward Bora, appeared and were cross-examined. Nov. 12, 2025 ECF Min. Entry; *see* Joint Witness Schedule, ECF 89; *see generally* Day 1 Trial Tr., ECF 97. Trial continued on November 13, 2025. Nov. 13, 2025 ECF Min. Entry; *see generally* Day 2 Trial Tr., ECF 96. Defendant testified and rested her case. Nov. 13, 2025 ECF Min. Entry. At the close of trial, the Court directed the parties to file their proposed findings of facts and conclusions of law by December 22, 2025, and to file their responsive briefs by January 16, 2026. *Id.*; *see* Pl. Mem., ECF 92; Def. Mem., ECF 93; Def. Reply, ECF 94; Pl. Reply, ECF 95.

## TRIAL EVIDENCE

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P.

52(a)(1). "It is within the province of the district court as the trier of fact to decide whose testimony should be credited." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012).

The Court summarizes the evidence presented at trial, makes findings as to each witness's credibility, reviews the parties' post-trial briefing, and then turns to its findings of fact and conclusions of law.

## I. Plaintiff's Case

At trial, Plaintiff introduced the testimony of three witnesses: Mr. Piscitello, Mr. Luna, and Mr. Devico. *See* Witness and Exhibit List, ECF 91. The Court admitted the following exhibits: the underlying Note for the Property, Pl. Ex. 1; a copy of the Mortgage encumbering the Property, recorded June 28, 2007, Pl. Ex. 2; a copy of the assignment of mortgage from PNC Bank, National Association, successor by merger to National City Bank, assigned to USMR, recorded December 28, 2018, Pl. Ex. 3; a certified copy of the assignment of mortgage from USMR to Windward Bora, recorded May 8, 2019, Pl. Ex. 4; a purchase contract, dated March 5, 2019, purporting to transfer the Note and Mortgage from USMR to Windward Bora, Pl. Ex. 5. *Id.* In addition, the Court admitted one document into evidence for a limited purpose: a notice, dated April 10, 2019, "offered to show that it matches what's on [Land Home's] internal records," Pl. Ex. 7. Day 1 Trial Tr., ECF 97, at 18:23–19:4.

### A. Piscitello Testimony; Plaintiff's Exhibit 7

Mr. Piscitello testified regarding his role at Land Home, where he has worked since on or about June 30, 2020. *Id.* at 13:10–19:10, 19:24–25. As Land Home's director of foreclosure oversight, Mr. Piscitello's job duties include "monitor[ing] defaults on any loans that [Land Home has] either originated or that are service transferred in" for regulatory compliance and "review[ing] the file for completeness, payment histories, documentation, collateral," etc., as well as "sending . . . notices." *Id.* at 14:2–11, 14:16–18,

7

15:1–7. Mr. Piscitello testified as to Land Home's "standard mailing procedures" when a file for a loan in default is incomplete — for example, because "notices haven't been sent." *Id.* at 14:21–15:7. The "transfer team" or "onboarding group," which Mr. Piscitello supervises, will review "all the documents that come over from a prior servicer, or . . . if [Land Home] originated the loan, we have document storage that we review." *Id.* at 15:19–16:12. The team will then cross-reference the documents against a checklist: "reviewing for the note, mortgage payment histories, assignments, endorsements, and then head of compliance section. So that would be for your RESPA notices, things like that." *Id.* at 16:10–20. If any document is missing, the transfer team will "draft and mail those letters." *Id.* at 16:10–12; *see id.* at 16:23–17:5. Mr. Piscitello further testified that if a "scan" of a mailed notice is placed in a digital folder, that "would confirm to my team that they have completed their process." *Id.* at 17:3–5. Mr. Piscitello also testified about Plaintiff's Exhibit 7, a document dated April 10, 2019, and entitled "Notice of Sale of Ownership of Mortgage Loan," which was introduced for a limited purpose, as noted above. Mr. Piscitello explained the exhibit matched the documents maintained in the ordinary course of Land Home's business. *Id.* at 17:25–18:12; *see also id.* at 18:16–19:6 (following an objection from Defendant, admitting the document into evidence "to show that it matches what's on [Land Home's] internal records"). On cross-examination, Mr. Piscitello testified that he did not prepare the notice, nor did he personally mail it, but that "a gentleman named Mr. Flores on the transfer team . . . would have been the person in place to prepare it," and that he did not have personal knowledge that the specific notice admitted into evidence as Plaintiff's Exhibit 7 was actually mailed to Defendant Regalado. *Id.* at 20:4–21:7.

On redirect examination, Mr. Piscitello further testified that when he "started working at Land Home in the end of June 2020, the process" for mailing notices to

8

ensure regulatory compliance "was the same all — you know, for all of the time prior, before [he] started working there." *Id.* at 21:17–21:24.

The Court finds that Mr. Piscitello's testimony, while basically credible, should be afforded little weight because the witness did not establish his personal knowledge regarding the procedures governing the creation and maintenance of the documents relevant to this case. Although Mr. Piscitello testified about Land Home's business practices regarding reviewing loan files for completeness and compliance with applicable notice procedures, *see id.* at 15:1–7, 16:3–17:5, 18:23–19:4, on cross-examination, he acknowledged that he began working at Land Home on or about June 30, 2020 — over a year after Land Home began servicing the loan in question, *id.* at 19:25–20:6. He did not prepare or mail the notice that Plaintiff offered as its Exhibit 7 and did not have personal knowledge regarding the procedures that were in effect at the time the document was mailed, nor whether that document was actually mailed to Defendant. *Id.* at 20:7–10, 21:4–7. The Court weighs Mr. Piscitello's testimony accordingly.

## B. Luna Testimony

Mr. Luna testified as to his process for serving foreclosure summons in his 10 years working with Alstate Process Service. *Id.* at 23:24–24:16. He testified that "Alstate prepares all of the documents for me that I have to serve, including foreclosure summonses. And they prepare everything that needs to be included in the documents," including § 1303 notices. *Id.* at 25:5–8; *see id.* at 25:9–13. He testified that "[t]he 1303 Notice is in a blue colored page which is different from the Summons and Complaint," that it is always blue, and that it is required to be blue. *Id.* at 25:16–21. He further testified that "[i]t is very important" that he review the documents Alstate provides before he goes "out on the road" because he works across New York City, and "[i]t is

very easy for [him] to notice if the 1303 Notice is affixed to the Summons and Complaint because it is in a different color, which is blue[.]" *Id.* at 26:4–10. He testified as follows:

> Q. So you always check the 1303 Notice to make sure it is a different color before you serve papers?
>
> A. Correct.
>
> Q. And if you notice that the 1303 [Notice] is not a different color, how do you remedy that if that was the case?
>
> A. I always carry extra 1303 Notices in my car, which are all blue.
>
> Q. Can you recall an instance where you were in your car and you noticed that the 1303 Notice that was provided to you was not blue?
>
> A. No.

*Id.* at 26:11–21.

On cross-examination, Mr. Luna testified that he makes approximately 20 to 25 attempts to serve process every workday (including some Saturdays), that he has completed service on thousands of people, and that he recalled completing service in this case in 2019 "based on reviewing [his] file." *Id.* at 27:14–23, 28:3–5.

The Court finds that Mr. Luna's testimony was competent and credible, in part because of his earnest demeanor and the consistency of his testimony. Based on the totality of his testimony and demeanor, and Mr. Luna's personal knowledge of his standard practices for serving foreclosure papers, dating back to service of the instant action, the Court affords substantial weight to his testimony.

## C. Devico Testimony; Plaintiff's Exhibits 1, 2, 3, 4, and 5

Mr. Devico testified regarding his role at Windward Bora, Windward Bora's purchase of the loan, and Windward Bora's procedure for storing records. *Id.* at 38:25–39:15, 39:16–24, 40:5–41:11.

10

As to Plaintiff's Exhibit 1, Mr. Devico identified it as the original Note signed by Ms. Regalado. *Id.* at 46:25–47:7. It was offered and admitted as the "current operating set of papers for this loan."[4] *Id.* at 49:25–50:4 (at sidebar). Mr. Devico further testified that the parties to the agreement in Exhibit 1 were National City Bank and Ana C. Regalado; that the initial value of the loan was $172,950, and that the agreement was dated May 9, 2007. *Id.* at 51:20–52:8.

Mr. Devico further testified about Plaintiff's Exhibit 2, a copy of the Mortgage on the Property, recorded on June 28, 2007. *Id.* at 52:16–19. The Court observed that the copy was a photocopy of the certified copy before admitting it into evidence without objection. *Id.* at 53:6–21, 53:22–54:6. Mr. Devico stated that National City Bank is listed as the lender, and the Mortgage is dated May 9, 2007. *Id.* at 54:8–16.

---

[4] Of the exhibit, the Court observed that:

- "[T]he copies that were provided to the Court have handwritten marks on . . . the original version. These do appear to be inked, wet ink marks."

- "There are initials 'ACR' on the first four pages of the note. . . . On the final page of the agreement, there is an inked signature that appears to be on behalf of Ana C. Regalado[.]"

- "[T]he order portion of the document also has what appears to be an original stamp with blue ink signature."

- "The next page, the page that starts with 'Your billing rights' also has what appears to be original ink marks 'ACR.'"

- "The first allonge to the note is dated March 29, 2019, . . . and it states, 'Paid to the order of Windward Bora LLC,' and it appears to have an original inked signature by a Thomas [Dunkel]. And then there is a second allonge to the note indicating that the allonge is making the note payable to Lakeport 10 LLC without recourse from Windward Bora and it is signed by a [Kaleena Ogo]."

Day 1 Trial Tr., ECF 97, at 50:11–51:14.

As to Plaintiff's Exhibit 3, Mr. Devico identified it as a copy of the certified copy of an assignment of Mortgage on the Property. *Id.* at 54:20–23; *see id.* at 54:24–55:2 (Plaintiff's counsel noting that the copy itself is not certified). The exhibit was admitted absent objection from defense counsel. *Id.* at 55:3, 55:23–56:4. Mr. Devico established that the assignment was recorded on December 28, 2018, and assigned the Mortgage from PNC Bank, successor by merger to National City Bank, to USMR. *Id.* at 56:9–14.

In addition, Mr. Devico testified regarding Plaintiff's Exhibit 4, a certified copy of an assignment of the Mortgage on the Property, dated March 29, 2019, and recorded May 8, 2019, assigning the loan from USMR to Windward Bora. *Id.* at 57:18–58:13. Absent objection from defense counsel, the exhibit was admitted. *Id.* at 58:3–5. Mr. Devico read the following portion of the document into the record:

> KNOW ALL MEN BY THESE PRESENTS that for value received and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said MORTGAGE, with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and all of the covenants and provisos therein contained, and the said Assignor hereby grants and convey unto the said Assignee, the Assignor's beneficial interest under the MORTGAGE.

2019 Assignment of Mortgage, Pl. Ex. 4; *see* Day 1 Trial Tr., ECF 97, at 58:21–59:11. Mr. Devico further explained that Windward Bora received "the original note, the copy of the mortgage, the recorded mortgage allonge with the assignments, the copy of the assignments and we received that assignment of mortgage" after the transaction memorialized by the purchase contract, admitted as Plaintiff's Exhibit 5, closed. Day 1 Trial Tr., ECF 97, at 60:18–61:1.

Mr. Devico also testified about Plaintiff's Exhibit 5, a purchase agreement for a group of loans, including the Mortgage in this case. *See* Purchase Contract, Pl. Ex. 5;

Day 1 Trial Tr., ECF 97, at 41:14–42:5, 45:15–46:16. The purchase agreement, dated March 5, 2019, is between USMR and Windward Bora, and Mr. Devico described this document as "fully executed." Day 1 Trial Tr., ECF 97, at 41:14–24. At sidebar, however, Defendant's counsel raised an objection to the document's admission, noting that it was "not signed" and was "heavily redacted" to the point where counsel could not "say whether it was an authentic document." *Id.* at 42:9–43:12. The Court queried whether the objection went more to weight than to admissibility. *Id.* at 42:24–25, 43:7–9. Plaintiff's counsel countered that the redacted portions of the document, which included the purported purchase price and indemnity provisions, were "not really relevant" to the purpose for which the document was offered, which was to "show that the loan on Regalado was purchased by Windward Bora, the note and the mortgage." *Id.* at 43:17–44:4, 45:16–18. The exhibit was admitted for that purpose. *Id.* at 45:5–8.

Overall, the Court finds that Mr. Devico's testimony was credible. He demonstrated personal knowledge of the exhibits and Windward Bora's document management system, as well as familiarity with the purchase contract Windward Bora entered into with USMR. He also answered candidly and without evasion when the Court questioned him regarding a purported transfer of the Note from Windward Bora to Lakeport 10 LLC, even though the questioning had the potential to undermine

Windward Bora's status as the real party in interest in this case.[5] *See id.* at 62:20–63:7. The Court weighs his testimony accordingly.

## II. Defendant's Case

Defendant Regalado was the sole defense witness. *See* Witness and Exhibit List, ECF 91. Ms. Regalado testified as to how she became aware of the instant lawsuit. Day 2 Trial Tr., ECF 96, at 81:10–82:18. Specifically, she testified that she "found some papers near — outside near the garbage bins" in August 2019, though she could not remember the exact date. *Id.* at 81:10–23. She recalled the following:

Q. And after you saw the papers, what did you do next?

A. I picked them up, I read them, and brought them into my house.

Q. And when you say you read them, did you read every page?

A. Yes, I did read them because I thought these were very important papers, and then I got scared.

Q. So while you were reading them, do you remember what color the pages were?

A. All of the papers were white.

Q. Were there any pages in there that were a color other than white?

A. No.

Q. How can you be sure?

---

[5] The Court conducted its own examination of Mr. Devico regarding Plaintiff's Exhibit 1 and the allonge assigning the Note to Lakeport 10 LLC. Day 1 Trial Tr., ECF 97, at 62:10–63:1. Mr. Devico testified that his understanding of the effect of that allonge was that the Note was transferred to Lakeport 10 LLC, and that Windward Bora was no longer the holder of the Note as of some date following the initiation of this case. *Id.* at 63:2–13. Discussion was held at sidebar regarding whether this allonge meant that the case was not being prosecuted in the name of the real party in interest, as required by Federal Rule of Civil Procedure 17. *Id.* at 64:4–67:16. Following a brief recess, defense counsel confirmed that they did not object to Windward Bora's prosecuting the case under Rule 17 because "it is the law of the case that the [N]ote is not [a] negotiable instrument" and that therefore the allonge "has no legal effect" on Lakeport 10 LLC's "standing or . . . interest in this action." *Id.* at 73:5–11; *see also id.* at 73:20–74:1 (Plaintiff's counsel concurring with this position).

A. Because I read them all, and had I seen a paper that was a different color, it would really catch my attention.

*Id.* at 82:4–18. Later in her direct examination, she reiterated her recollection that there was not a blue piece of paper among these documents. *Id.* at 105:10–14.

Ms. Regalado further testified that the papers had been "fastened with a rubber band" and that, after reading them, she stored the papers "[i]n a cabinet in the living room of my house." *Id.* at 96:18, 97:3. Per her testimony, it was not until "[t]hree months after" she found the papers, "[a]pproximately[] in 2020," that she removed the papers from the cabinet to give them to her attorney at Queens Legal Services. *Id.* at 97:5, 97:14, 97:16, 98:24–99:9.

Defense counsel then handed Ms. Regalado a document that had been marked as Defendant's proposed Exhibit F, which Ms. Regalado recognized as "papers about an attempt to foreclose." *Id.* at 97:22–98:13. The following colloquy occurred:

Q. Have you ever seen these papers before?

A. No.

Q. Is it your testimony you've never seen these papers before?

A. These papers? Yes, yes, of course.

Q. Okay. And when did you see them?

A. I saw them when I found them in 2019.

Q. Do these appear to be the same papers you found in 2019?

A. Yes.

*Id.* at 98:14–23. After defense counsel offered the document into evidence as the papers that Ms. Regalado found in front of her home in 2019, Plaintiff's counsel conducted voir dire about the documents, inquiring about whether the papers as they appeared in court were the complete set of papers Ms. Regalado found in 2019. *Id.* at 99:11–13,

15

99:14–100:24. Following defense counsel's objection on relevance grounds, a discussion was held out of the hearing of the witness; Plaintiff's counsel clarified that the questioning was "relevant to the chain of custody of the document." *Id.* at 102:5–6. The Court inquired whether Ms. Regalado had testified or would testify as to when exactly she delivered the papers to her former attorney, and defense counsel withdrew the request to introduce the document. *Id.* at 102:12–103:18 (at sidebar); *see id.* at 105:1–7 (in open court).

On cross-examination, Plaintiff's counsel asked Defendant about the status of any other loans and resulting litigation, leading to the following exchange:

Q. Ms. Regalado, are there any other loans that you took out that are secured against the property?

A. No.

Q. There are no other mortgages that you took out that are secured against the property, Ms. Regalado?

A. No, because I thought there was only one.

Q. Is there any other litigation that's pending concerning any other mortgages?

A. Yes.

Q. So there's other litigation that's pending concerning other mortgages, but there's no other mortgages?

A. No.

Q. What's the subject matter of the other litigation?

A. It's because I [cannot] pay the big mortgage.

Q. So you stopped paying that mortgage?

A. Yes.

Q. And did you stop paying this mortgage because you couldn't pay?

A. This mortgage, I have not stopped paying it because I thought it was only one mortgage.

16

*Id.* at 109:3–22. She further testified that she received collection notices from National City Bank around July 2007, never received any collections notices or other letters from USMR, and had not received papers identifying Windward Bora before the instant lawsuit. *Id.* at 109:23–110:18. Finally, Plaintiff testified that she had never seen the notice that had been entered into evidence as Plaintiff's Exhibit 7. *Id.* at 110:19–111:13.

The Court finds that Ms. Regalado's testimony was largely unpersuasive because, *inter alia*, her testimony conflicted with other facts in the record. For example, Ms. Regalado testified on direct examination that she first discovered the summons and complaint "outside near the garbage bins" in or around August 2019, "fastened with a rubber band." *Id.* at 81:10–25, 96:18. She then testified that although she "felt very scared" upon receiving court documents with her name on them, she put them "[i]n a cabinet in the living room of [her] house" after reviewing them "carefully," reviewed them again about "three months after" (approximately in or around November 2019), and then gave them to an attorney "in 2020." *Id.* at 96:21–97:16. Not only is this testimony implausible, it is belied by the record.[6]

Ms. Regalado also contradicted herself during her testimony. For example, she stated that while she was aware that the other mortgage she took out was the subject of a separate litigation, she testified that she had not stopped paying the Mortgage that is the subject of the instant litigation because she "thought it was only one mortgage." *Id.* at 109:3–22. She also answered certain questions with an unwarranted degree of confidence that the Court found implausible and unconvincing. For example, after

---

[6] The Court notes that even if this sequence of events was plausible for a person in Defendant's position, her testimony is directly contradicted by the record in this case, which illustrates that an attorney entered an appearance on Defendant's behalf on September 11, 2019, 12 days after Mr. Luna effected service. *See* Aff. of Service, ECF 10; Notice of Appearance, ECF 11.

Plaintiff's counsel established during voir dire that the rubber band fastening the documents that were proposed as Defendant's Exhibit F had broken, he inquired:

> Q. Is it possible that after the rubber band broke, that one of the pages might have fallen out of the pile?
>
> A. No.
>
> Q. It's not possible that a page would fall out of a pile of non-affixed papers?
>
> A. It's impossible that a page would fall from the packet of papers since I put it away very well.

*Id.* at 100:15–21. Based on the Court's observations, the Court finds that aspects of Ms. Regalado's testimony were self-serving, inconsistent, and implausible, which damaged her credibility. The Court thus affords those aspects of her testimony very little weight.

## III. Post-Trial Briefing

In its post-trial submissions, Plaintiff argues that it has established its entitlement to foreclosure by showing that (1) it was the assignee of the Note at the time this action was commenced, through Mr. Devico's testimony, and (2) the RPAPL § 1303 notice was blue, through Mr. Luna's testimony. Pl. Mem., ECF 92, at 4–7, 7–9. Plaintiff further contends that Mr. Piscitello established that a notice of sale of loan ownership was properly mailed, based on his testimony detailing Land Home's general procedures for ensuring procedural compliance with applicable regulations. *Id.* at 9–11. Finally, Plaintiff argues that Defendant failed to introduce evidence at trial that would substantiate her damages under the TILA. *Id.* at 12–13.

Defendant's post-trial submissions contend that Plaintiff failed to demonstrate its standing to commence this action because it did not "establish that it was either the holder or assignee of the Subject Note[.]" Def. Mem., ECF 93, at 8. Specifically, Defendant's position is that the Note is not a negotiable instrument of which Plaintiff

18

took physical possession, and that the assignment of the Mortgage did not effect the assignment of the underlying Note. *Id.* at 9–14; *accord Regalado*, 751 F. Supp. 3d at 133 (finding that, under the New York Uniform Commercial Code, the Note is not a negotiable instrument, and therefore Plaintiff cannot establish standing as the holder of the Note). Defendant further argues that the purchase contract, which was entered into evidence as Plaintiff's Exhibit 5, fails to demonstrate that the Note was assigned to Windward Bora. Def. Mem., ECF 93, at 14–17. Next, Defendant argues that Plaintiff failed to demonstrate compliance with RPAPL § 1303 because Mr. Luna "did not testify to any specific facts" regarding his service, "nor was a compliant notice or affidavit of service accepted into evidence," while Ms. Regalado's specific recollection was that the summons and complaint she found outside her home in August 2019 "did *not* contain any colored paper." *Id.* at 18–20. In addition, Defendant submits that Plaintiff failed to establish that the Mortgage was in default with admissible evidence, even though Judge Irizarry previously held that Defendant's default was not in dispute. *Id.* at 20–22; *see Regalado*, 751 F. Supp. 3d at 129. Finally, Defendant argues that because Judge Irizarry determined that there was no dispute that National City Bank failed to provide the required TILA disclosures in her summary judgment order, if Plaintiff has established its standing as assignee of the Note, then Defendant is entitled to damages in the amount of twice the finance charge associated with the subject loan,[7] and attorneys' fees and costs in an amount to be determined upon subsequent application. Def. Mem., ECF 93, at 22–23.

---

[7] Defendant submits that she "has been prevented from calculating" this amount "due to Windward [Bora]'s failure to submit a full transaction history of the loan, or any other evidence of the total interest, fees, and charges applied to the account since origination." Def. Mem., ECF 93, at 23.

19

## FINDINGS OF FACT

The Court finds that the evidence admitted at the trial established the following material facts:

1)      On May 9, 2007, Ana C. Regalado executed an Equity Reserve Agreement in the amount of $172,950, which provided an equity line of credit secured by the Mortgage encumbering the Property, which Mortgage was offered by National City Bank and which was recorded on June 28, 2007. Note, Pl. Ex. 1; Mortgage, Pl. Ex. 2; Day 1 Trial Tr., ECF 97, at 47:2–7, 50:7–51:14, 51:22–52:8, 52:17–19.

2)      On September 20, 2018, the Mortgage and Note were assigned from PNC Bank, National Association, as successor in interest to National City Bank, to USMR, which assignment was recorded on December 28, 2018. Note, Pl. Ex. 1; Mortgage, Pl. Ex. 2; 2018 Assignment of Mortgage, Pl. Ex. 3; Day 1 Trial Tr., ECF 97, at 56:9–14, 57:9–13.

3)      On March 5, 2019, USMR and Windward Bora executed a purchase contract for a pool of mortgage loans, including the loan secured by the Mortgage on Ms. Regalado's Property. Purchase Contract, Pl. Ex. 5; Day 1 Trial Tr., ECF 97, at 39:17–24, 41:16–24, 45:5–8, 45:16–18, 45:22–23, 46:4–16.

4)      The Bill of Sale annexed to the purchase contract was not executed. Purchase Contract, Pl. Ex. 5, at Bates Stamp REGALADO 000347; *cf.* Day 1 Trial Tr., ECF 97, at 60:18–21, 61:1.

5)      On March 29, 2019, the Mortgage was assigned from USMR to Windward Bora LLC, which assignment was recorded on May 8, 2019. Mortgage, Pl. Ex. 2; 2019 Assignment of Mortgage, Pl. Ex. 4 (dated March 29, 2019); Day 1 Trial Tr., ECF 97, at 57:18–22, 58:8–15, 59:1–14.

6)       In or around August 2019, Mr. Luna served Defendant with the summons and complaint in this action, as well as a 1303 notice as required by the RPAPL. Day 1 Trial Tr., ECF 97, at 28:3–5.

7)       The 1303 notice delivered by Mr. Luna was printed on blue colored paper. *Id.* at 25:25–26:21.

As noted above, the Court admitted the following exhibits: the Equity Reserve Agreement underlying the Mortgage (the Note), together with the attached allonges, Pl. Ex. 1; a copy of the Mortgage encumbering the Property, recorded June 28, 2007, Pl. Ex. 2; a copy of the assignment of mortgage from PNC Bank, National Association, successor by merger to National City Bank, to USMR, recorded December 28, 2018, Pl. Ex. 3; a certified copy of the assignment of mortgage from USMR to Windward Bora, recorded May 8, 2019, Pl. Ex. 4; a purchase contract, dated March 5, 2019, transferring the Note and Mortgage from USMR to Windward Bora, dated March 5, 2019, Pl. Ex. 5. *Id.* In addition, as discussed above, the Court admitted one document into evidence for a limited purpose: a notice, dated April 10, 2019, "offered to show that it matches what's on [Land Home's] internal records," Pl. Ex. 7. Day 1 Trial Tr., ECF 97, at 18:23–19:4.

## CONCLUSIONS OF LAW

### I. Foreclosure

#### A. Plaintiff's *Prima Facie* Case

Under New York Law, to establish its entitlement to a foreclosure, a lender must prove "the existence of an obligation secured by a mortgage, and a default on that obligation." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997) (quotation marks omitted); *see also MTGLQ Invs., L.P. v. Rashid*, 184 N.Y.S.3d 372, 373 (App. Div. 2d Dep't 2023) (observing that to "establish prima facie entitlement to judgment as a matter of law in a foreclosure action, a plaintiff must produce the mortgage, the unpaid note,

21

and evidence of the default"); *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) ("Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." (quotation marks omitted)); *E. Sav. Bank, FSB v. Ferro*, No. 13-CV-5882 (SJF) (GRB), 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015).

As discussed above, there is no dispute as to the existence of the Note or the Mortgage, and both were entered into evidence at trial. *See* Note, Pl. Ex. 1 (copy of the Note); Mortgage, Pl. Ex. 2 (copy of the Mortgage); *see also* Fed. R. Evid. 1003 (allowing duplicates to be admitted to the same extent as the original if undisputed). Defendant contends, however, that Plaintiff has not established default through admissible evidence. Def. Mem., ECF 93, at 20–22.

It is generally the plaintiff's burden to establish default through admissible evidence, which may include "an affidavit of a person with knowledge, or a complaint verified by a person with knowledge." *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007) (quotation marks omitted). Here, however, the Court finds that the issue of Defendant's default is not in dispute, for two reasons.

First, in the parties' joint pretrial order, they agreed to exclude the issue of Defendant's default from resolution at trial. *See* Joint Pretrial Order, ECF 79, § III, at ECF p. 4 (representing that the issue of whether "Plaintiff established the existence and validity of the Note and Mortgage, as well as Defendant's Default thereunder" was "decided on summary judgment and will not be tried"); *accord Regalado*, 751 F. Supp. 3d at 129–30 (finding that there was no dispute that Defendant was in default in light of Defendant's admission of non-payment in her counter Rule 56.1 statement). "Courts generally enforce stipulations that narrow the issues in a case." *Sinicropi v. Milone*, 915

22

F.2d 66, 68 (2d Cir. 1990) (collecting cases). While "a party is free, as a matter of trial strategy or in the interests of saving time and money expended over matters that are not in dispute, to relieve its adversary of the obligation to prove elements of the adversary's claims" by stipulating to them, that party cannot later prevail on an argument that its opponent "failed to adequately prove a fact that [the party] stipulated out of the case." *Amica Mut. Ins. Co. v. BMW of N. Am., LLC*, No. 22-391-cv, 2023 WL 3144042, at *1, *3 (2d Cir. Apr. 28, 2023) (summary order); *cf. Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15-CV-6519 (KAM) (RLM), 2023 WL 3455057, at *15 (E.D.N.Y. May 15, 2023) (observing that because the parties stipulated to certain facts about which a precluded expert would have otherwise opined, the defendant could not have been prejudiced by the preclusion of that expert at trial). Having agreed that the issue of Plaintiff's proof of default was decided on summary judgment and would therefore "not be tried," causing Plaintiff to plan its trial strategy accordingly, Defendant cannot now claim Plaintiff failed to prove an element of its case that it believed was not in question. *See* Pl. Reply, ECF 95, at 2–4; *cf. United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (noting that "disregard of an earlier ruling [should] not be allowed to prejudice the party seeking" to benefit from such ruling, where "prejudice . . . refers to a lack of sufficiency of notice or a lack of sufficient opportunity to prepare armed with the knowledge" that the earlier ruling will not be controlling (quotation marks omitted)).

Second, the Court finds that Defendant conceded at trial that she had stopped making payments toward the Mortgage at issue in this case, although Defendant's answer to the question could have been clearer. *See* Day 2 Trial Tr., ECF 96, at 109:15–22 (acknowledging that she had stopped paying the primary mortgage and had not paid the second mortgage on the Property). Defendant's trial testimony is in accord with the findings on summary judgment; at that stage, Judge Irizarry held that Defendant's

23

"attempts to raise questions regarding Plaintiff's proof of default, such as the affiants' personal knowledge of Defendant's payment history and the origin of certain documents," were "moot in light of Defendant's concession that she has not made a payment since 2015." *Regalado*, 751 F. Supp. 3d at 129; *see also id.* at 130 (reviewing Plaintiff's proof of Defendant's non-payment submitted as part of the summary judgment record); Def. Mem., ECF 93, at 6 (conceding that it was determined on summary judgment that Ms. Regalado has not made any payments towards the Mortgage since June 2015); *cf. Green Mountain Holdings (Cayman) Ltd. v. La Hacienda Bufeis LLC*, No. 21-CV-0574 (ENV) (CLP), 2024 WL 1926076, at *3–4 (E.D.N.Y. May 2, 2024) (in summary judgment context, rejecting the defendants' objections that the plaintiff submitted inadmissible evidence to prove defendants' default because defendants admitted to non-payment).

The Court finds that the evidence adduced at trial and the law of the case[8] establish "the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." *Baez*, 2020 WL 4261130, at *3 (quotation marks omitted). Accordingly, Plaintiff has demonstrated its *prima facie* entitlement to foreclosure.

---

[8] The doctrine of law of the case "posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." *Great Lakes Reinsurance (UK) SE v. Herzig*, 764 F. Supp. 3d 164, 184 (S.D.N.Y. 2025) (alteration in original) (quotation marks omitted). Under the doctrine, "summary judgment rulings apply at a subsequent trial," absent a "cogent or compelling" basis to deviate from the court's "prior ruling, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (quotation marks omitted).

### B. RPAPL § 1303 Compliance

In addition to the common law elements of its *prima facie* case discussed above, in New York, the plaintiff in a mortgage foreclosure action must demonstrate statutory compliance with the RPAPL. *See CIT Bank, N.A. v. Anderson*, No. 16-CV-1712 (ERK) (PK), 2019 WL 3842922, at *1 (E.D.N.Y. Aug. 14, 2019); *Blue Castle (Cayman) Ltd. v. Tawil*, No. 24-CV-1082 (MKB) (MMH), 2025 WL 2482306, at *4 (E.D.N.Y. Aug. 28, 2025). Under RPAPL § 1303, a foreclosing party in an action involving residential real property must provide notice to "any mortgagor if the action relates to an owner-occupied one-to-four family dwelling," with specific formatting and content requirements for such notices. RPAPL § 1303(1)–(4); *see also* N.Y. Real Prop. § 265-a (Home Equity Theft Prevention Act ("HETPA")); *First Nat'l Bank of Chi. v. Silver*, 899 N.Y.S.2d 256, 258 (App. Div. 2d Dep't 2010) (explaining that "HETPA . . . requires the foreclosing party in a residential mortgage foreclosure action to deliver statutory-specific notice to the homeowner, together with the summons and complaint" pursuant to RPAPL § 1303(1)).

The required § 1303 notice for owner-occupied dwellings must contain specific language, starting with "Help for Homeowners in Foreclosure[.] New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully." RPAPL § 1303(3). Additionally, the notice must be in bold, 14-point type, printed on colored paper (other than the color of the summons and complaint), and the title of the notice must be in bold, 20-point type. *Id.* § 1303(2). Section 1303 notices to homeowners must "be delivered with the summons and complaint," but unlike notices to tenants, the statute does not mandate additional service requirements if the homeowner also occupies the property. *Id.*; *see also id.* § 1303(4).

25

Here, Plaintiff has established by a preponderance of the evidence that the § 1303 notice served was printed on blue paper; that is, it is more likely than not that the RPAPL notice was compliant. Plaintiff's process server, Lisandro Luna, credibly testified about his routine practice of including a blue § 1303 notice along with the summons and complaint in a foreclosure action. *See* Day 1 Trial Tr., ECF 97, at 23:24–28:5. He specifically explained that he always checks to ensure that the § 1303 notice Alstate has provided is blue; that it is "very easy" for him to notice if the provided notice is blue because the color stands out; and that, although he does not remember a time where the notice was not blue, he carries a stack of extra blue notices with him, just in case he needs to supply one. *Id.* at 25:16–21, 26:4–21. Such evidence of a witness's standard practices "may be admitted to prove that on a particular occasion [the witness] acted in accordance with the habit or routine practice . . . regardless of whether it is corroborated or whether there was an eyewitness." Fed. R. Evid. 406.

Defendant's testimony that "[a]ll of the pages were white" and "had [she] seen a paper that was a different color, it would really catch [her] attention" does not undercut Mr. Luna's testimony. Day 2 Trial Tr., ECF 96, at 82:1–18; *see also id.* at 105:10–14. First, it is undisputed that Mr. Luna did not serve Defendant Regalado personally. She claims to have found the documents outside by her trash, and was thus not in a position to testify as to what was originally served to her co-tenant. *See* Day 2 Trial Tr., ECF 96, at 81:10–23; *see also* Aff. of Service, ECF 10. In addition, as noted above, Defendant could not have stored the summons and complaint "in a cabinet" in her living room after being served in August 2019, only removing them to give them to her attorney three months later, when an attorney entered a notice of appearance on her behalf in September 2019. *Compare* Day 2 Trial Tr., ECF 96, at 97:3–16 *and* Aff. of Service, ECF 10 (indicating that Defendant was served on August 30, 2019), *with* Notice of Appearance,

26

ECF 11 (dated September 11, 2019). In addition, as discussed above, the Court found Mr. Luna's testimony to be credible, while it found Defendant's testimony less reliable. Giving Defendant the benefit of the doubt, her testimony evinces an incomplete understanding of what was served or a faulty memory that cannot be relied upon to establish the non-existence of a blue § 1303 notice in the face of Mr. Luna's testimony.

"[A]s trier of fact, the judge is entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness." *Krist*, 688 F.3d at 95 (internal citations and quotation marks omitted). The Court credits Mr. Luna's testimony regarding the service of a blue § 1303 notice, finds that Defendant was not competent to rebut this testimony because she was not served personally, and finds that Plaintiff has demonstrated by a preponderance of the evidence that a blue § 1303 notice was served along with the summons and complaint. The Court accordingly finds that Plaintiff has proved its compliance with RPAPL § 1303, demonstrating this statutory requirement of its *prima facie* case.

### C. Plaintiff's Standing to Foreclose

If the mortgagor contests the mortgagee's standing to foreclose, "the plaintiff must prove its standing as part of its prima facie showing." *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 336 (2d Cir. 2021) (quotation marks omitted). "A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that it is either the holder or assignee of the underlying note at the time the action is commenced." *Bank of New York Mellon v. Gordon*, 97 N.Y.S.3d 286, 292 (App. Div. 2d Dep't 2019) (quotation marks omitted).

To demonstrate standing as an assignee, a plaintiff must demonstrate that the note, specifically, was assigned to it. As the New York Court of Appeals has observed, "the note, and not the mortgage, is the dispositive instrument that conveys standing to

27

foreclose under New York law." *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015); *see E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (observing that while "the delivery or assignment of a *note* without the accompanying mortgage transfers the debt and can confer standing on the recipient," "assignment of a *mortgage* without the accompanying note does not provide the assignee with a right to the debt" (emphasis in original) (collecting cases)). A written assignment of a note through reference to the note in the mortgage assignment will suffice to assign the note, but the language must "'show[] the intention of the owner of a right to transfer it.'" *W. Coast 2014-7, LLC v. Moses*, No. 20-CV-4101 (NGG) (JRC), 2022 WL 20703851, at *6 (E.D.N.Y. Oct. 27, 2022) (quoting *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016) (per curiam) (internal quotation marks omitted)). Phrased another way, "even if an allonge is defective, a plaintiff can show that they have standing to foreclose if they produce a mortgage assignment that references the underlying note." *La Hacienda Bufeis LLC*, 2024 WL 1926076, at *3. However, in the absence of a clear written assignment of the note, assignment of a mortgage is a nullity for the purpose of establishing standing to foreclose. *See Gustavia Home, LLC v. Hoyer*, 802 F. Supp. 3d 445, 465 (E.D.N.Y. 2025) (collecting cases), *appeal filed* (2d Cir. Nov. 24, 2025); *see also, e.g.*, *1077 Madison St., LLC v. Smith*, No. 13-CV-7182 (DLI) (RLM), 2015 WL 5793427, at *11 (E.D.N.Y. Sept. 30, 2015) ("Assignment of the mortgage without the note it secures is insufficient to provide the assignee with standing to foreclose."), *aff'd*, 670 F. App'x 745 (2d Cir. 2016).

That said, "[n]o special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Melina*, 827 F.3d at 223 (quotation marks omitted). Indeed, some courts applying New York law have held that the language of a contractual arrangement to purchase a loan, separate from the recorded assignment, can assign the note and confer standing to foreclose. *See,*

28

*e.g.*, *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 196 (S.D.N.Y. 2018); *New Falls Corp. v. Soni*, No. 16-CV-6805 (HG) (LGD), 2024 WL 1241982, at *4 (E.D.N.Y. Mar. 22, 2024); *see also, e.g.*, *JP Morgan Chase Bank, Nat'l Ass'n v. Atedgi*, 79 N.Y.S.3d 81, 83–84 (App. Div. 2d Dep't 2018) (collecting state court cases).

It is clear from the evidence admitted at trial that after the Note was executed on May 9, 2007, the Note and Mortgage were assigned to USMR on September 20, 2018. *See* 2018 Assignment of Mortgage, Pl. Ex. 3 (assigning "all beneficial interest under that certain Mortgage executed by" Defendant on the Property, "[t]ogether with the Note or Notes therein described or referenced to"); *accord Regalado*, 751 F. Supp. 3d at 132. In contrast, as set forth above, the assignment of mortgage from USMR to Windward Bora, dated March 29, 2019, and recorded on May 8, 2019, assigned the Mortgage to Windward Bora but contains no such assignment language referencing the Note. *See* 2019 Assignment of Mortgage, Pl. Ex. 4 (designating Windward Bora as the assignee of the Mortgage last assigned from PNC Bank, without reference to the Note); *see also* Day 1 Trial Tr., ECF 97, at 59:1–11.

To demonstrate the intent to transfer the Note as well as the Mortgage, Plaintiff offered Mr. Devico's testimony and Plaintiff's Exhibit 5, the purchase contract between USMR and Windward Bora. *See* Purchase Contract, Pl. Ex. 5. This contract anticipated the transfer of a group of loans, including the Mortgage, from USMR to Windward Bora. *Id.* Section 3.1 of this document reads, in relevant part, as follows:

> Transfer of Mortgage Loans. The Mortgage Loans shall be transferred and assigned pursuant to the Bill of Sale, in the form attached hereto as Exhibit B and made a part hereof by reference, which Bill of Sale shall sell, transfer, assign, set-over, quitclaim and convey to Buyer all right, title and interest of Seller in and to each of the Mortgage Loans sold, any payment received by Seller from and after the Cut-Off Date, if any, . . . the Mortgage Loan Documents, and any applicable insurance proceeds and condemnation awards related to the Mortgage Loans relating to rights accrued by Seller after the Cut Off Date.

29

*Id.* at Bates Stamp REGALADO 000336. The same contract defines "Mortgage Loan Documents" as including "the Mortgage Note evidencing such Mortgage Loan along with any endorsement or allonge necessary to render Buyer the holder of such Mortgage Note." *Id.* at Bates Stamp REGALADO 000335; *see also id.* (defining "Mortgage Note" as "the promissory note or other evidence of indebtedness evidencing such Mortgage Loan"). Other language in the contract evinces an intent to assign the notes. *See id.*, Art. VI(f)–(g), at Bates Stamp REGALADO 000340.

So far, so good for Plaintiff's standing argument. But Section 3.1 further reads, in pertinent part:

> Once the Seller acquires the Mortgage Loans ***Seller will immediately execute and deliver to Buyer the Bill of Sale and such other documents*** as are proper or appropriate for the legal transfer of its right, title and interest in and to the Mortgage Loans purchased pursuant to this Agreement (specifically, however, not inclusive of individual Mortgage Loan assignments, which matter is controlled by Sections 5.11 and 6.1(f) hereof[)].

*Id.* at Bates Stamp REGALADO 000336 (emphasis added). The plain language of this section indicates that the transfer and assignment of the Mortgage Loans (defined under the purchase contract as "delinquent loan[s] evidenced by a Mortgage Note and secured by a lien") is contingent upon the delivery of an executed Bill of Sale, in conjunction with delivery of other documents necessary for the transfer of the seller's right and interest in the loans. *Id.* at Bates Stamp REGALADO 000335. Moreover, Section 5.11 indicates that the "Seller shall be responsible for preparing any assignments, and for the recording and/or filing of the originals of any such assignments" and that the Seller

30

"agrees to execute such documents as appropriate subject to the limitation imposed by Section 6.1(f) hereof."[9] *Id.* § 5.11, at Bates Stamp REGALADO 000338.

But the Bill of Sale annexed to the purchase contract as Exhibit B, and entered into evidence as part of Plaintiff's Exhibit 5, is blank. *See id.* at Bates Stamp REGALADO 000347. Although the *agreement* was executed by Thomas Dunkel on behalf of USMR and Yonel Devico on behalf of Windward Bora on March 5, 2019, the *Bill of Sale* is undated and unexecuted. *Compare id.* at Bates Stamp REGALADO 000333 *and* Bates Stamp REGALADO 000345, *with id.* at Bates Stamp REGALADO 000347. Moreover, the Bill of Sale contains certain redactions, including a redaction to what appears to be the date for the pertinent Mortgage Loan Sale Agreement. *Id.*

Mr. Devico testified that the purchase contract was "fully executed by myself and by the manager of [US] Mortgage Resolution LLC." Day 1 Trial Tr., ECF 97, at 41:23–24. A discussion was held out of the hearing of the witness regarding the redactions to the document and the fact that the document was not fully executed. *Id.* at 42:19–45:3. Counsel for Plaintiff stated:

> [T]he version produced doesn't have an executed bill of sale and, obviously, if there was one, we can't supplement it at this point, but at this point, the purpose of this document is to show the transaction took place and there are other documents that are being introduced into evidence that show that the transaction closed.

*Id.* at 44:8–14. In open court, Mr. Devico testified that the purpose of the exhibit "is to show that the loan on Regalado was purchased by Windward Bora, the note and the

---

[9] The Court observes that the purchase contract contains no section labeled "6.1(f)." Section (f) of Article VI states: "Seller agrees to honor requests for execution of endorsements of Mortgage Note from Seller to Buyer if made within ninety (90) days following the Transfer Date, after which Seller shall not be obligated to honor such requests." Purchase Contract, Pl. Ex. 5, at Bates Stamp REGALADO 000340.

31

mortgage." *Id.* at 45:16–18. Mr. Devico later testified that after the loan was purchased and the transaction closed, Windward Bora "received the original note, the copy of the mortgage, the recorded mortgage allonge with the assignments, the copy of the assignments." *Id.* at 60:18–61:1. Defendant did not cross-examine Mr. Devico. *See id.* at 62:6–7.

The purchase contract makes clear that the Bill of Sale, not the contract, would "sell, transfer, assign, set-over, quitclaim and convey to Buyer all right, title, and interest" in the Note at issue here. Purchase Contract, Pl. Ex. 5, at Bates Stamp REGALADO 000336. Moreover, under the contract, the Seller was "responsible for preparing" and recording the assignments. *Id.* at Bates Stamp REGALADO 000338; *see id.* at Bates Stamp REGALADO 000340 (explaining that USMR has no obligation to honor "requests for execution of endorsements of Mortgage Note from Seller to Buyer" made after 90 days of transfer). Given the language of the assignment of Mortgage, dated March 29, 2019, which postdates the execution of the purchase contract and does not reference the Note, and in the absence of an executed Bill of Sale in evidence, the Court cannot determine, by a preponderance of the evidence, that USMR intended to assign the Note to Windward Bora. *See* 2019 Assignment of Mortgage, Pl. Ex. 4; Purchase Contract, Pl. Ex. 5, at Bates Stamp REGALADO 000347; *see also Melina*, 827 F.3d at 223. Rather, the plain language of the assignment, which USMR was responsible for preparing under the purchase agreement, is entirely silent as to the Note.

Mr. Devico's testimony as to his understanding of the documents is insufficient to establish the intent of USMR, a third party, to assign the Mortgage *and* the Note. *See* Day 1 Trial Tr., ECF 97, at 41:21–24, 45:15–18. In addition, Mr. Devico's testimony that the Note was delivered to Windward Bora does not rectify this gap in the evidence. *Id.* at 60:18–21. It is the law of the case that the Note is a not a negotiable instrument, and

32

thus its underlying rights cannot be transferred by physical delivery. *See Regalado*, 751 F. Supp. 3d at 133; *see also W. Coast 2014-7, LLC*, 2022 WL 20703851, at *6 (observing that the plaintiff could not establish standing through its physical possession of the note where the note was not a negotiable instrument). Under these circumstances, Plaintiff did not adduce sufficient evidence at trial to show "a mortgage assignment that references the underlying note." *La Hacienda Bufeis LLC*, 2024 WL 1926076, at *3.

Accordingly, the Court finds that Plaintiff has not established, by a preponderance of the evidence, that USMR assigned the Note to Plaintiff. Therefore, Plaintiff has not established that it had standing to commence this foreclosure action.

## II. Notice and Disclosure Violations

Judge Irizarry's summary judgment order left certain of Defendant's counterclaims open for resolution at trial — namely, whether Plaintiff violated the notice and disclosure requirements mandated by the TILA, entitling Defendant to damages and attorney's fees. *See Regalado*, 751 F. Supp. 3d at 134–35 (discussing 15 U.S.C. §§ 1601 *et seq.*, 1641(g)(1)).

The TILA requires that creditors "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). The TILA also allows claims against assignees of the initial creditor under specific circumstances. 15 U.S.C. § 1641(e)(1). Here, because the Court has found that Plaintiff was not properly assigned the Note at the time this action commenced, Defendant cannot maintain a counterclaim against Plaintiff as an assignee of the initial creditor. Therefore, Defendant's counterclaims are denied.

33

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish, by a preponderance of the evidence, that it had standing to foreclose on the Mortgage underlying this action. The Court therefore concludes that Plaintiff's claim was not proven at trial. The Clerk of Court is respectfully directed to enter judgment for Defendant and to close this case.

**SO ORDERED.**

Dated:  Brooklyn, New York
        April 2, 2026

_Taryn A. Merkl_

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

34